No. 25-10226

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

ANDERSON, et al.

*Plaintiff-Appellants,*

v.

SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY

*Defendant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

No. 8:22-cv-2941-VMC-CPT

_____

BRIEF FOR APPELLANTS

_____

JULIE M. WILSON
General Counsel

PARAS N. SHAH
Deputy General Counsel

JESSICA HORNE
Assistant Counsel

March 17, 2025

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W.
Suite 1000
Washington, D.C. 20001
(202) 572-5500

Counsel for Appellants

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and 11th Circuit Rule 26.1-1, Appellants disclose the following list of individuals and entities that have an interest in the outcome of this case:

Anderson, Tracy R.

Bailey, Kathryn W.

Covington, Virginia Hernandez, Senior U.S. District Judge

Emden, Christopher John, Assistant U.S. Attorney

Guerrero, Mauricio

Handberg, Roger B., U.S. Attorney

Horne, Jessica

Laurent, Sageline

Li, William

Mayorkas, Alejandro

Morales, Rebecca

National Treasury Employees Union

Noem, Kristi, Secretary of Homeland Security (official capacity)

Owens, Jasmine

Peak, Steven R.

Rhodes, David P., Assistant U.S. Attorney, Chief, Appellate

Division

Thomas, Jeffrey S.

Shah, Paras N.

Shulman, Christopher, Esq.

Siekkinen, Sean, Assistant U.S. Attorney

Sweeney, Sara C., Acting U.S. Attorney

Tuite, Hon. Christopher P., U.S. Magistrate Judge

U.S. Department of Homeland Security

Wilson, Julie M.

Wise, Mamie, Assistant U.S. Attorney

No publicly traded company or corporation has an interest in the

outcome of the case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument in this case. Oral argument will assist the court in understanding the issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ..........................................................i

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS .........................................................iv

TABLE OF CITATIONS ..........................................................vi

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION ..................................................................1

STATEMENT OF THE ISSUES...................................................1

PRELIMINARY STATEMENT...................................................2

STATEMENT OF THE CASE ....................................................3

    I.    Procedural Background ..................................................4

    II.    Statement of Facts........................................................5

        A.    CBP Officers' Duties at the Port of Tampa.........................5

        B.    The Occasional Need to Conduct a Patdown ......................6

        C.    The Port of Tampa's Discriminatory Scheduling Policy.....8

        D.    The Effect of the Discriminatory Policy on Appellants ....10

    III.    Standard of Review........................................................11

SUMMARY OF THE ARGUMENT .........................................11

ARGUMENT ..................................................................14

    I.    CBP Failed to Rule Out Using Non-CBP Officers As a Viable
Alternative to Female-Only Assignments...................................17

iv

A.    The Evidence Showed That Non-CBP Officers Would Only Need to Be Used Sparingly. .............................................. 18

B.    The Evidence Was Insufficient to Show That Such Infrequent Use of Non-CBP Officers Would Jeopardize CBP's Operations ............................................................... 19

II.    CBP Failed to Rule Out Paying Overtime to Bring in Off-Duty Female CBP Officers As a Another Viable Alternative. ............ 22

A.    The Jury Could Not Have Relied on the Least Cost Regulation. ........................................................................ 22

B.    Evidence That Calling in Off-Duty Female CBPOs on Overtime Would Be Inconvenient Is Not Sufficient to Rule Out Overtime As an Alternative. ..................................... 25

CONCLUSION ........................................................................... 27

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS ............................................................................... 28

# TABLE OF CITATIONS

## Cases

*Bammerlin v. Navistar Int'l Transp. Corp.*,
  30 F.3d 898 (7th Cir. 1994) ............................................................ 23

*Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385 (5th Cir. 1971) ..... 15

*Dothard v. Rawlinson*, 433 U.S. 321 (1977) .................................... 15, 22

*Duarte v. Mayorkas*, 27 F.4th 1044 (5th Cir. 2022) ............................ 24

*Ed Taylor Const. Co. v. Occupational Safety & Health Rev. Comm'n*,
  938 F.2d 1265 (11th Cir. 1991) ...................................................... 23

*Garrett v. Okaloosa County*, 734 F.2d 621 (11th Cir. 1984) ............ 15, 21

*Gunther v. Iowa State Men's Reformatory*,
  612 F.2d 1079 (8th Cir. 1980) ............................................... 16, 17, 26

*Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir. 1982) ....... 15, 16, 21, 26

*Hayes v. Shelby Mem. Hosp.*, 726 F.2d 1543 (11th Cir. 1984) .............. 14

*Henry v. Milwaukee Cnty.*, 539 F.3d 573 (7th Cir. 2008) ........... 16, 17, 26

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468
  F.3d 826 (D.C. Cir. 2006) .............................................................. 24

*Pesci v. Budz*, 935 F.3d 1159 (11th Cir. 2019) ...................................... 11

*Presidential Aviation Inc. v. FAA*, No. 20-14841,
  2021 U.S. App. LEXIS 24480 (11th Cir. Aug. 17, 2021) ............... 23

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) ................. 11

*Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939 (11th Cir. 2023) ............. 11

*Weeks v. S. Bell Tel. & Tel. Co.*, 408 F.2d 228 (5th Cir. 1969) ............... 16

vi

## Statutes

28 U.S.C. § 1291 ................................................................. 1

28 U.S.C. § 1331 ................................................................. 1

42 U.S.C. § 2000e-2(e) ...................................................... 14

42 U.S.C. § 2000e-16 .......................................................... 1

## Rules

Fed. R. App. P. 4(a)(4)(A) ................................................. 1

Fed. R. Civ. P. 50 .............................................................. 11

## Regulations

19 C.F.R. § 24.16 ..................................................... 13, 22, 23

## STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION

The district court had subject-matter jurisdiction under 28 U.S.C. § 1331 because this case presents a federal question. Plaintiffs-Appellants, who are five U.S. Customs and Border Protection (CBP) Officers, brought a civil action against their employer, the Secretary of the U.S. Department of Homeland Security, alleging sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16.

This Court has jurisdiction under 28 U.S.C. § 1291 because this is an appeal of a final decision of the U.S. District Court for the Middle District of Florida. The district court denied Plaintiffs-Appellants' Renewed Motion for Judgment as a Matter of Law, disposing of all parties' claims, on January 22, 2025.

This appeal is timely under Federal Rule of Appellate Procedure 4(a)(4)(A) because Plaintiffs-Appellants filed their notice of appeal within 30 days of the district court's final order, on January 23, 2025.

## STATEMENT OF THE ISSUES

Whether Defendant-Appellee (CBP) provided a legally sufficient evidentiary basis for the jury to find that CBP's designation of three female-only night-shift assignments at the Port of Tampa in fiscal year

2018 was reasonably necessary to its business operations; or that CBP had no way to rearrange work assignments to avoid a clash between travelers' privacy interests and CBP Officers' Title VII rights.

## PRELIMINARY STATEMENT

This case involves the discriminatory policy that CBP instituted at the Port of Tampa in fiscal year (FY) 2018 of designating certain assignments on the night shift as female-only. CBP defends the policy under the bona fide occupational qualification (BFOQ) exception to Title VII liability. A jury found that CBP satisfied the requirements of the BFOQ exception. But CBP failed to provide legally sufficient evidence at trial to support the jury's verdict.

Appellants are Tracy R. Anderson, Mauricio Guerrero, Sageline Laurent, Rebecca Morales, and Jeffrey S. Thomas. They will be referred to in this brief as "Appellants."

Appellee is the Secretary of the U.S. Department of Homeland Security (DHS). Appellants' employer, CBP, is a part of DHS. Thus, Appellee will be referred to throughout this brief as "CBP."

References to the Record will be by docket number in the district court, followed by the page number: e.g., Doc. 122 at 1. With a few

2

exceptions, the page numbers referenced will be those generated by the district court's electronic filing system.

The exceptions are the trial transcript documents. The transcript for each day of the five-day trial was entered on the docket as Docs. 115-119. The transcript documents with page numbers generated by the district court's electronic filing system are not available at the time of filing. So, while this brief will refer to the transcripts by docket number, it will cite the page numbers assigned by the court reporter.

## STATEMENT OF THE CASE

In this case, U.S. Customs and Border Protection (CBP) imposed a scheduling policy, designating certain assignments female-only, that is facially discriminatory on the basis of sex. The evidence at trial showed that instead of resorting to discrimination, CBP could have used existing alternatives—alternatives that CBP has used and continues to use—to achieve the same ends.

The district court held that the jury reasonably could have found those alternatives nonviable. At most, however, the evidence that the district court cited as sufficient to meet CBP's burden showed that female-only assignments were preferable to or more convenient than

the alternatives, not that they were necessary. This is not enough to meet the demanding standards of the bona fide occupational qualification defense to Title VII liability.

## I. Procedural Background

Appellants filed their Title VII action in the U.S. District Court for the Middle District of Florida on December 27, 2022. *See* Doc. 1. After discovery, both sides moved for summary judgment as to liability. Doc. 81 at 20. The district court denied both parties' motions on May 22, 2024. Doc. 81 at 32-33. The court found that "a genuine dispute of material fact exists as to whether sex is a BFOQ for purposes of the relevant sex-discriminatory policy of designating female-only slots in FY18." Doc. 81 at 25. In particular, the court noted that factual issues remained on whether two alternatives to establishing female-only assignments were viable: using female non-CBP Officers to conduct or witness searches of female travelers when female CBP Officers were not available and paying overtime to bring in off-duty female CBP Officers when needed. Doc. 81 at 32.

A five-day jury trial was held in November 2024. Doc. 122 at 2. The jury found that Appellants satisfied the elements of their prima facie

case of discrimination but that CBP proved its BFOQ defense. Doc. 122 at 2-3.

During trial, Appellants filed a Motion for Judgment as a Matter of Law, on which the Court deferred ruling. Doc. 122 at 3. After trial, Appellants filed a Renewed Motion for Judgment as a Matter of Law. Doc. 122 at 3. The district court denied the motion on January 22, 2025. Doc. 122 at 17. Appellants filed their Notice of Appeal the next day.

## II.  Statement of Facts

### A.    CBP Officers' Duties at the Port of Tampa

CBP Officers are the law enforcement personnel who work at the ports of entry into the United States, like airports and seaports. Doc. 115 at 64. CBP Officers process individuals, conveyances, and merchandise entering through the ports to ensure compliance with customs, immigration, and agricultural laws and to prevent entry of terrorists, illegal narcotics, or other contraband. Doc. 107-2 at 8-22; Doc. 115 at 64; Doc. 116 at 70; Doc. 117 at 7, 103.

The Port of Tampa, where Appellants work, includes Tampa International Airport, the Port of Tampa Bay seaport, and other, smaller airports and seaports. Doc. 115 at 63; Doc. 117 at 156. CBP

5

Officers are assigned to different work units throughout the port to perform different tasks, like inspecting air and sea cargo or analyzing security threats. Doc. 107-2 at 8-22; Doc. 115 at 78-80. CBP Officers assigned to the Operations Unit do most of the passenger processing work at the port—that is, reviewing passengers' travel documents, customs forms, and other information before admitting them into the country. Doc. 115 at 80; Doc. 107-2 at 18. These CBP Officers are stationed mainly at airport and process passengers arriving into the United States at all hours on international flights. Doc. 115 at 80; Doc. 107-2 at 18. Because the Port of Tampa also hosts cruise terminals, during the daytime, when cruises arrive, CBP Officers process the passengers arriving in the country on cruise ships as well. Doc. 115 at 80; Doc. 107-2 at 18.

## B. The Occasional Need to Conduct a Patdown

Occasionally, CBP Officers may need to conduct a patdown on individual arriving in the United States on a flight or a cruise ship. Doc. 107-3 at 26; Doc. 116 at 73, 85. A patdown is a non-urgent, over-the-clothes personal search. Doc. 107-3 at 26; Doc. 116 at 81-82. CBP's Personal Search Handbook sets forth the policies and procedures that

6

CBP Officers must follow when conducting these patdowns. *See generally* Doc. 107-3. For instance, CBP Officers must seek supervisory approval to conduct a patdown. Doc. 107-3 at 25-26. If the patdown is approved, a CBP Officer of the same gender as the individual must perform the patdown, and another Officer of the same gender must serve as a witness.[1] Doc. 107-3 at 16.

The Personal Search Handbook sets forth alternative procedures when a CBP Officer of the appropriate gender is not available to conduct the type of non-urgent patdown at issue here. Doc. 107-3 at 16-17. It states that another law enforcement officer or federal employee may conduct the patdown, and any other person may witness it. Doc. 107-3 at 17.

---

[1] The process and requirements for these non-urgent patdowns—the only type of patdown at issue in this case—differ from an immediate patdown for officer safety. *Compare* Doc. 107-3 at 25 (defining "immediate patdown"), *with* Doc. 107-3 at 26 (defining "patdown search"). Those searches occur when a CBP Officer suspects an individual of carrying a weapon. Doc. 107-3 at 25; Doc. 116 at 78-79. In that scenario, a CBP Officer of any gender may conduct the immediate patdown. Doc. 107-3 at 15, 25; Doc. 116 at 79. No supervisory approval is necessary, and no witness is required. Doc. 107-3 at 16, 25.

### C.     The Port of Tampa's Discriminatory Scheduling Policy

Each year, CBP Officers at the Port of Tampa are assigned to shifts, schedules, and work units in the Bid, Rotation, and Placement (BRP) process. Doc. 107-2 at 1; Doc. 115 at 69-70. In general, the process allows CBP Officers to rank their preferred assignments, and assignments are then issued based on seniority. Doc. 115 at 72-73.

A few months before the fiscal year 2018 BRP process took place at the Port of Tampa, Robert Diaz became Assistant Area Port Director there. Doc. 107-2 at 2 (showing the FY2018 BRP timeline, beginning October 31, 2017); Doc. 117 at 149-50 (establishing that Diaz became Assistant Port Director in Tampa in June 2017). When he arrived, he began reviewing the workload and systems of record at the port, "to work towards correcting any policies that the port may not be following at the time." Doc. 117 at 159-160.

When reviewing the data on personal searches performed at the port, Diaz noticed some incidents involving female travelers that he believed violated the Personal Search Handbook. Doc. 117 at 163. In some of those incidents, a male conducted or witnessed a patdown of a female traveler. Doc. 117 at 163, 167-169. In others, a female non-CBP

8

Officer conducted or witnessed the search. Doc. 117 at 167. Sometimes, no one witnessed the search at all. Doc. 118 at 18. Diaz also noticed incidents in which a personal search should have been performed on a female traveler, such as when scheduled narcotics were seized from the traveler, but no search occurred. Doc. 117 at 177-178.

Although many of the same problems occurred for searches of male travelers (Doc. 118 at 103), Diaz believed that he uncovered a systemic failure to conduct policy-compliant searches on female travelers. Doc. 117 at 178. He believed that this was the type of problem that he was directed to fix as Assistant Area Port Director. *See* Doc. 117 at 159. Before any major change affecting employees could be made, however, Diaz knew that he needed "to have the data to support that change." Doc. 117 at 178. So, he took notes on the incidents involving female travelers that concerned him. Doc. 117 at 178.

When he raised his concerns with the other command staff at the port, they decided to address it by designating certain assignments in the upcoming FY2018 BRP as female-only. Doc. 118 at 39-41. If no female CBP Officers bid for those assignments, they would be filled by reverse seniority order. Doc. 107-7 at 1. At first, they designated six

female-only assignments: three on the night shift and three on the day shift. Doc. 118 at 42. After pushback from the president of the union chapter representing CBP Officers in Tampa, however, they only implemented the three female-only assignments on the night shift. Doc. 118 at 40, 45-46.

### D.    The Effect of the Discriminatory Policy on Appellants

In FY2018, the Port of Tampa employed sixty-three non-supervisory CBP Officers who were eligible to participate in the BRP process: fifty-five males and eight females. Doc. 107-5 at 7. Because none of the eight female CBP Officers wanted the night-shift assignments that were designated female-only, the three least senior female CBP Officers—Appellants Tracy Anderson, Sageline Laurent, and Rebecca Morales—got stuck with them. Doc. 107-5 at 6; Doc. 115 at 93-96. At the same time, more senior male CBP Officers—including Appellants Mauricio Guerrero and Jeffrey Thomas—ranked those assignments as their first choice. Doc. 107-4 at 24, 82. But because they were male, they were assigned elsewhere. Doc. 107-5 at 6; Doc. 115 at 93-96.

10

## III. Standard of Review

This Court "review[s] the denial of a motion for judgment as a matter of law de novo." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 943 (11th Cir. 2023). Under Federal Rule of Civil Procedure 50, judgment as a matter of law is appropriate when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Like under the summary judgment standard, the court should consider all the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000). The court, however, is "not required to draw far-fetched or unreasonable inferences in [the nonmoving party's] favor." *Pesci v. Budz*, 935 F.3d 1159, 1170 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

CBP cannot justify designating female-only assignments on the night shift under the extremely narrow BFOQ exception to Title VII liability. The evidence at trial was insufficient to show that this

discriminatory policy was necessary, as required under the BFOQ provision, because it did not rule out viable alternatives.

**A.** One reasonable alternative to female-only assignments that CBP's evidence failed to rule out was using female non-CBP Officers to conduct and witness patdowns when female CBP Officers were not available. In fact, CBP's Personal Search Handbook authorizes other law enforcement officers or federal employees to conduct patdowns, and any other person to witness them, in these very circumstances.

***First***, using the alternate personnel authorized under the Personal Search Handbook was reasonable because CBP would only need to use them infrequently. The evidence showed that the need to patdown a female passenger during night shift hours is rare: less than once per month in FY2018.

***Second***, even if CBP Officers are better qualified to conduct and witness these rare patdowns, the evidence showed that using the alternate personnel authorized in the Personal Search Handbook would not undermine CBP's operations. The evidence showed that those personnel have been used when CBP Officers of the appropriate gender are not available in Tampa and at least one other port, both before and

12

after the female-only assignments were implemented. And no evidence showed that the use of those alternate personnel has caused any issues.

**B.**  Another viable alternative to female-only assignments that the evidence was insufficient to rule out was paying overtime to bring in off-duty female CBP Officers to conduct and witness female searches at night. The district court's reasoning for denying judgment as a matter of law on this issue does not withstand scrutiny.

*First*, according to the district court, the jury could have found that paying female CBP Officers overtime to perform personal searches of female passengers on the night shift violated the "least cost" principle in 19 C.F.R. § 24.16. But interpreting this regulation is a question of law that the jury was not qualified to resolve. Indeed, because statutes generally prevail over regulations, the regulatory duty to minimize costs cannot outweigh the statutory duty to avoid discrimination unless reasonably necessary. Moreover, the evidence showed that the cost of this alternative would be minimal: before designating female-only assignments, CBP spent mere hundreds of dollars to bring in off-duty female CBP Officers to conduct female searches at night.

13

***Second***, the district court said that the jury "could have concluded that an overtime call-list for female CBPOs would not have been effective" because of the inconveniences of calling in off-duty CBPOs. But courts, including the Eleventh Circuit, have held that inconvenience cannot justify discrimination. In addition, even if some evidence suggested that this alternative would be inconvenient, the evidence did not prove it nonviable. So, because both using overtime and using non-CBP Officers were viable alternatives, insufficient evidence existed to show that female-only assignments were necessary.

## ARGUMENT

Because CBP's designation of female-only assignments constitutes facial discrimination, "[t]he only affirmative defense" available is "the existence of a bona fide occupational qualification (BFOQ)." *Hayes v. Shelby Mem. Hosp.*, 726 F.2d 1543, 1547 (11th Cir. 1984). Under this defense, an employer escapes liability only "in those certain instances where . . . sex . . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e). A BFOQ provides "only the narrowest of exceptions to the general rule requiring equality of

14

employment opportunities." *Dothard v. Rawlinson*, 433 U.S. 321, 333 (1977).

The Eleventh Circuit has issued two decisions on the BFOQ defense in the context of gender discrimination: *Garrett v. Okaloosa County*, 734 F.2d 621 (11th Cir. 1984), and *Hardin v. Stynchcomb*, 691 F.2d 1364 (11th Cir. 1982). Reflecting the high burden on employers, in both cases, the Court rejected the defense for male-only correctional officer positions in majority-male detention facilities. *Garrett*, 734 F.2d at 624; *Hardin*, 691 F.2d at 1370-74.

While both *Garrett* and *Hardin* are instructive, *Hardin* explains the employer's burden in more detail. Indeed, the district court adopted the standard articulated in *Hardin* in the jury instructions here. Doc. 105 at 11; Doc. 122 at 8. Further defining what "necessary" means under the statute, the Court in *Hardin* first explained that a sex-discriminatory policy "is valid only if the essence of the business would be undermined" without that policy. *Hardin*, 691 F.2d at 1370 (citing *Diaz v. Pan Am. World Airways, Inc.*, 442 F.2d 385, 388 (5th Cir.), *cert. denied*, 404 U.S. 950 (1971)). "Defendants can satisfy that burden," the Court then explained, "only by proving they had a factual basis for

15

believing that all or substantially all women would be unable to safely and efficiently perform the duties of the job." *Id.* (citing *Weeks v. S. Bell Tel. & Tel. Co.*, 408 F.2d 228, 232 (5th Cir. 1969)).

*Hardin* set forth one more part to the employer's burden. Because that case involved deputy sheriff assignments to the male section of a jail, the Court couched the requirement in those terms: "defendants bear the burden of proving that because of the nature of the operation of the business they could not rearrange job responsibilities in a way that would eliminate the clash between the privacy interests of the inmates and the employment opportunities of female deputy sheriffs." *Id.* at 1370-71 (citing *Gunther v. Iowa State Men's Reformatory*, 612 F.2d 1079, 1086 (8th Cir. 1980), *cert. denied*, 446 U.S. 966 (1980)); *see also Henry v. Milwaukee Cnty.*, 539 F.3d 573, 580 (7th Cir. 2008) ("Employers also bear the burden of proving that they could not rearrange job responsibilities or otherwise eliminate the clash between the business necessities and the employment opportunities of female officers."). In other words, the employer must "demonstrate that there are no reasonably available alternative practices with less discriminatory impact that would satisfy the legitimate needs of the

16

institution." *Gunther*, 612 F.2d at 1087; *see also Henry*, 539 F.3d at 581-82 (discussing the various "alternatives" to discrimination that the employer failed to rule out).

Here, the evidence was insufficient to show that CBP could not make alternative arrangements to eliminate the clash between ensuring that females perform and witness patdowns of females and affording all CBP Officers the opportunity to receive assignments based on seniority, not gender. In fact, the evidence established that two alternatives were viable: occasionally using non-CBP Officers to conduct or witness searches of female passengers and paying overtime to bring in off-duty female CBP Officers when needed.

## I.    CBP Failed to Rule Out Using Non-CBP Officers As a Viable Alternative to Female-Only Assignments.

The Personal Search Handbook provides that when a CBP Officer of the appropriate gender is not available, another law enforcement officer or federal employee of that gender may conduct the search, and any other person of that gender may witness it. Doc. 107-3 at 17. At the Tampa International Airport, where the female-only night shift assignments were implemented, CBP Officers had ready access to the local police officers, Transportation Security Agents, and other CBP

17

employees located onsite, if they needed assistance with a personal search of a female traveler. Doc. 115 at 104, 106-07; Doc. 116 at 75-78, 151.

Nevertheless, the district court agreed with CBP that "[a] jury can and did conclude that it was not reasonable to routinely rely on assistance from other female law enforcement personnel or even members of the public" as an alternative to designating female-only assignments on the night shift. Doc. 122 at 12. This conclusion is wrong for two reasons. First, the evidence showed that searches of females at night were far from "routine." Second, no evidence showed that the use of non-CBP Officers, which occurred in Tampa and at other ports before and after the designation of female-only assignments, hindered CBP's operations.

## A.    The Evidence Showed That Non-CBP Officers Would Only Need to Be Used Sparingly.

"[R]outinely rely[ing] on assistance from other female law enforcement personnel or even members of the public" (Doc. 122 at 12) was not the alternative that CBP was required to rule out. Patdowns, in general, are not an everyday occurrence. The data referenced at trial for FY2016, for example, showed a total of 200 incidents in the whole

18

year—88 involving females and 113 involving males—in which a patdown should have been conducted. Doc. 107-14; Doc. 107-17.

Patdowns of females during night-shift hours are especially rare. Only seventeen of the 88 incidents involving females in FY2016 occurred during the night shift. Doc. 118 at 97-98. In FY2018, the first year when female-only assignments were implemented, only nine patdowns of females were conducted during the night shift—fewer than one per month. Doc. 118 at 116-17. So, the need to use non-CBP Officers to conduct or witness female searches at night would seldom even arise.

## B.    The Evidence Was Insufficient to Show That Such Infrequent Use of Non-CBP Officers Would Jeopardize CBP's Operations.

The evidence was not sufficient to show that using non-CBP Officers in the infrequent cases when they would be needed would be unreasonable. The district court cited evidence that CBP Officers were "better qualified to conduct personal searches than other non-CBPO law enforcement officers or non-law enforcement CBP employees." Doc. 122 at 9-11 (citing Doc. 117 at 42-43, 102-05, 110-11, 125). But no evidence showed that using non-CBP Officers, even if not ideal, would undermine CBP's operations.

19

In fact, the evidence showed that the use of alternate personnel to assist with patdowns—in Tampa and elsewhere, both before and after the designation of female-only assignments—was satisfactory. First, Assistant Area Port Director Diaz testified that CBP still used alternate personnel at Tampa International Airport in FY2018—after the creation of the female-only night shift assignments—for personal searches of each sex, including during the day shift. Doc. 118 at 117 (female personal searches), 120-21 (male personal searches). Moreover, each of the Appellants testified that they had used alternate personnel to assist them with patdowns and experienced no issues with their performance. Doc. 116 at 32-33, 76-78, 151-52, 174; Doc. 117 at 15-16.

Fresno Port Director Alyssa Morris further testified that her port consistently uses the alternate personnel that CBP's Personal Search Handbook allows for rare personal searches of female travelers at the international airport at her port. Doc. 116 at 14. Director Morris testified that her port has never had issues getting assistance from alternate personnel in a timely way or had any issues with the performance of those alternate personnel. Doc. 116 at 14-15.

The evidence about the incident-free use of non-CBP Officers in Fresno and even in Tampa itself paints a very similar picture to the one that led the Eleventh Circuit to reject the BFOQ defense in its prior cases. In *Hardin*, for example, the Court reasoned that "[i]n other correctional institutions it has been found possible to preserve the privacy of inmates while employing guards or correctional officers of the opposite sex, and defendants have failed to prove that similar accommodations cannot be made in this case." *Hardin*, 691 F.2d at 1373.

In *Garrett*, the Court similarly concluded that the Okaloosa County Jail could not justify male-only corrections officer positions in part because "other Florida counties were using female correctional officers." *Garrett*, 734 F.2d at 624. In addition, Okaloosa County had since begun employing female corrections officers itself and offered "no evidence that that the use of female correctional officers [there] has in any way hindered the efficient operation" of the jail. *Id.*

So, the mere evidence that CBP Officers are better qualified than other personnel who are authorized to conduct and witness patdowns is not enough to render using those personnel nonviable. In other words,

21

resorting to sex discrimination to ensure that CBP Officers conduct the handful of female searches at night—when personnel whom the evidence suggests are perfectly capable of doing so could be used instead—is not "reasonably necessary" under the "extremely narrow" BFOQ standard. *Dothard*, 433 U.S. at 333-34.

## II.  CBP Failed to Rule Out Paying Overtime to Bring in Off-Duty Female CBP Officers As a Another Viable Alternative.

Another reasonable alternative that CBP failed to rule out was paying overtime to bring in off-duty female CBP Officers to conduct searches of female travelers at night. The district court cited two main bases on which the jury could have found this alternative nonviable. Neither one is valid.

### A.  The Jury Could Not Have Relied on the Least Cost Regulation.

First, according to the district court, the jury could have found that paying female CBP Officers overtime to perform personal searches of female passengers on the night shift violated the "least cost" principle in 19 C.F.R. § 24.16 ("least cost regulation"). Doc. 122 at 13-14. At trial, the court took judicial notice of this regulation, which states as follows:

> All work assignments should be made in a manner which minimizes the cost to the government or party in interest.

22

> Decisions, including, but not limited to, what hours should be covered by a tour of duty or whether an assignment should be treated as a continuous assignment or subject to commute compensation, should be based on least cost considerations.

19 C.F.R. § 24.16(d)(2). Assistant Area Port Director Diaz testified that this provision obligated him to minimize overtime costs. Doc. 118 at 25.

Whether or not the jury "shared Mr. Diaz's belief" (Doc. 122 at 13) that 19 C.F.R. § 24.16 prohibited him from considering overtime as an alternative to female-only assignments, this was not an issue for the jury to resolve. "[T]he interpretation of regulatory terms presents a pure question of law." *Presidential Aviation Inc. v. FAA*, No. 20-14841, 2021 U.S. App. LEXIS 24480, at *5 (11th Cir. Aug. 17, 2021) (citing *Ed Taylor Const. Co. v. Occupational Safety & Health Rev. Comm'n*, 938 F.2d 1265, 1271 (11th Cir. 1991)). *See also Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury . . . . It is a question of law, to be resolved by the court.").

Neither the jury nor Assistant Area Port Director Diaz was qualified to analyze how the regulatory duty to minimize costs affects the statutory duty to avoid discrimination unless reasonably necessary. Indeed, "a valid statute always prevails over a conflicting regulation."

23

*Duarte v. Mayorkas*, 27 F.4th 1044, 1060 n.13 (5th Cir. 2022) (quoting

*Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468

F.3d 826, 829 (D.C. Cir. 2006)).

Even if the regulatory duty to minimize costs bears some

relevance to the statutory BFOQ analysis, the evidence showed that the

cost of implementing the overtime alternative would be minimal. For

example, the jury heard evidence that the cost of overtime for female

CBP Officers who worked during night-shift hours to conduct or witness

searches of female travelers in the years before the female-only

assignments were implemented was low. Doc. 118 at 149. That cost was

only $854.18 in all of FY2016 and a paltry $503.72 for all of FY2017.

Doc. 118 at 149. The district court previously acknowledged that this

category of overtime was "less than 0.15% of Area Port of Tampa's

overall overtime expenditures in those years." Doc. 81 at 31.

Moreover, the evidence showed that in FY2018, after the

implementation of the female-only night shift assignments, the Port of

Tampa's overtime expenditures increased by over $100,000. Doc. 118 at

146. So, surely the least cost regulation does not require CBP to

implement a discriminatory policy that would otherwise violate Title

24

VII merely to save a few hundred dollars—especially when the Port of Tampa ended up *increasing* its overall overtime expenditures by significantly more.

### B. Evidence That Calling in Off-Duty Female CBPOs on Overtime Would Be Inconvenient Is Not Sufficient to Rule Out Overtime As an Alternative.

In addition to finding that the jury could have relied on the least cost regulation, the district court said that the jury "could have concluded that an overtime call-list for female CBPOs would not have been effective" because of the inconveniences of calling in off-duty CBP Officers. Doc. 122 at 14. For instance, the district court cited Assistant Area Port Director Diaz's testimony that assigning overtime requires compliance with many rules, and that sometimes it is hard to reach people on the phone after hours. Doc. 122 at 14 (citing Doc. 118 at 33-36). The district court also cited testimony by the watch commander at a different port that CBP cannot make passengers wait an excessive amount of time for a patdown. Doc. 122 at 14 (citing Doc. 117 at 40-41, 55-56).

The Eleventh Circuit has held, however, that the employer's burden of proving that it could not make alternative arrangements to

25

avoid discrimination "is not met by . . . the administrative inconvenience" of those alternatives. *Hardin*, 691 F.2d at 1373-74; *see also Gunther*, 612 F.2d at 1087 ("Administrative inconvenience cannot justify discrimination."). After all, "Title VII requires administrative necessity, not merely administrative inconvenience, to satisfy the bfoq exception." *Id.* (citing *Diaz.*, 442 F.2d at 388); *see also Henry*, 539 F.3d at 582 ("The BFOQ defense . . . . "does not excuse investigation of and reliance upon alternatives that involve minor additional costs or inconveniences.").

In any event, even if some evidence suggested that calling in off-duty female CBP Officers would be inconvenient, that evidence was not sufficient to prove that it would be unworkable. Assistant Area Port Director Diaz conceded that holding a traveler for up to an hour for a personal search would not be an issue. Doc. 118 at 138-39. And Appellants Morales and Laurent testified that in FY2018 they could have reported back to Tampa International Airport on an overtime basis for a personal search in thirty minutes. Doc. 116 at 32, 180. Indeed, Morales and Laurent each testified that she had previously

26

reported to the airport on an overtime basis to conduct a personal search of a female traveler. Doc. 116 at 34-35, 182-83.

Workable and inexpensive, calling in off-duty CBP Officers to conduct and witness female searches in the infrequent cases when those searches are needed at night was a viable alternative to discrimination. The evidence at trial was insufficient to meet CBP's BFOQ burden.

## CONCLUSION

For these reasons, Appellants respectfully ask this Court to reverse the judgment below and order the district court to grant judgment as a matter of law for Appellants.

Respectfully submitted,

JULIE M. WILSON
General Counsel

PARAS N. SHAH
Deputy General Counsel

*/s/Jessica Horne*
JESSICA HORNE
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
202-572-5500
julie.wilson@nteu.org
paras.shah@nteu.org
jessica.horne@nteu.org

27

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

## 1.    Type-Volume

This document complies with the word limit of FRAP 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FRAP 32(f) and 11th Cir. R. 32-4, this document contains 5,080 words.

## 2.    Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the typestyle requirements of FRAP 32(a)(6).


*/s/Jessica Horne*
JESSICA HORNE
Assistant Counsel

NATIONAL TREASURY
EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C. 20001
202-572-5500
jessica.horne@nteu.org

Attorney for Appellants

Dated: March 17, 2025